1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   MARC ANTHONY BRYANT,                    No. C 11-00164 CW (PR)

11          Petitioner,                      ORDER DENYING PETITION
                                             FOR WRIT OF HABEAS
12       v.                                  CORPUS

13   W.J. SULLIVAN, Warden,

14          Respondent.

15   _____/

16       Petitioner Marc Anthony Bryant, a California prisoner

17   proceeding pro se, filed a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254, challenging the validity of his state

19   conviction.  Respondent filed an answer and a memorandum of points

20   and authorities in support thereof.  Petitioner responded with a

21   traverse.[1]  Having considered all of the papers filed by the

22   parties, the Court DENIES the petition.

23   //

24   _____

25       [1] Petitioner initially named Mike D. McDonald, warden of High
     Desert State Prison, as the Respondent in this action.  Petitioner
26   has since been transferred to the California State Prison (CSP) at
     Lancaster.  Pursuant to Rule 25(d) of the Federal Rules of Civil
27   Procedure, W.J. Sullivan, the current warden at CSP-Lancaster, is
     hereby SUBSTITUTED as Respondent in place of Petitioner's prior
28   custodian.

**United States District Court**
For the Northern District of California

BACKGROUND

I.   Procedural History

On July 15, 2008, a Contra Costa County Superior Court jury convicted Petitioner of one count of first degree residential robbery.  Cal. Penal Code §§ 211, 212.5(a).  The jury also found true the allegation that Petitioner acted voluntarily in concert with two or more persons in the commission of the robbery.  Cal. Penal Code § 213(a)(1)(A).

On December 12, 2008, the trial court sentenced Petitioner to state prison for a total determinate term of twenty-one years.

On May 26, 2009, Petitioner appealed the judgment to the California Court of Appeal.  He argued that the trial court deprived him of a fair trial by excluding proffered evidence that the robbery victim's parent used a racial epithet in reference to the robbers during a police interview.  On November 19, 2009, the California Court of Appeal affirmed the trial court's judgment.

On December 22, 2009, Petitioner filed a petition for review in the California Supreme Court.  On February 3, 2010, the California Supreme Court issued an order denying review.

On January 11, 2011, Petitioner filed the instant petition.

II.  Statement of Facts

The following is a summary of the key facts taken from the written opinion of the California Court of Appeal on direct review.

On April 13, 2007, two young African-American men--Jacquay Jackson and an individual who introduced himself as "Wiggler"--came to the Concord home of Sandra Belcher.  Belcher was at home with her sixteen-year-old son Michael, younger son Matthew, and grandniece (hereafter A.).  Jackson was a friend of Michael's.

Neither Belcher nor Michael had ever met "Wiggler."  Jackson and "Wiggler" left the house after approximately forty-five minutes.  Thereafter, Belcher left the house with Matthew and A.  As Belcher was leaving, Melanie, Michael's girlfriend, arrived at the house.

According to Michael, Jackson and "Wiggler" returned and they, along with two other African-American men, robbed Michael and Melanie at gun point and burglarized the house.  Michael later identified "Wiggler" as Petitioner.  Melanie identified Jackson as one of the burglars but was unable to identify Petitioner.  Belcher, however, identified both Jackson and Petitioner from the photographic lineups as the men who had been in her home earlier on the day of the crime.  See People v. Bryant, Case No. A123707, California Court of Appeal, First District (Nov. 19, 2009) (Resp't Ex. F).[2]

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

---

[2] Hereinafter, all references to exhibits are to those filed by Respondent in support of the answer to the petition, unless otherwise noted.

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

"Factual determinations by state courts are presumed correct

absent clear and convincing evidence to the contrary." <u>Miller-El</u>, 537 U.S. at 340.  A petitioner must present clear and convincing evidence to overcome the presumption of correctness under § 2254(e)(1); conclusory assertions will not do.  <u>Id.</u>

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d).  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).  In the present case, the California Court of Appeal is the highest court that addressed Petitioner's claims in a reasoned opinion.

DISCUSSION

In support of his petition for a writ of habeas corpus, Petitioner argues that the trial court's refusal to allow the defense to show that Belcher used a racial epithet in reference to Petitioner violated the Confrontation Clause and California Evidence Code § 352, and thereby deprived him of a fair trial.[3]

---

[3] Petitioner raises three claims in his petition.  In his second claim, he contends that Belcher's use of a racial epithet in reference to him was critical evidence of bias and the exclusion of that evidence violated the Confrontation Clause and Evidence Code § 352.  In his third claim, he explains what he believes the jury would have concluded about the reliability of Belcher's testimony if evidence of the racial epithet had been admitted.  Because these two claims stem from and are within the scope of Petitioner's first claim, the Court addresses them together.

5

The California Court of Appeal considered and rejected this claim as follows:

A. Trial Court Exercise of Discretion

Bryant contends that the trial court erred by refusing to allow him to question Belcher about her use of a racial epithet during her police interview.  He contends that by excluding this critical evidence of Belcher's bias against African-Americans, the trial court both abused its discretion to exclude evidence and violated his right to confront witnesses against him, thereby depriving him of a fair trial.  (U.S. Const., 6th Amend; Evid. Code, § 352.)

In the trial court, Bryant sought to introduce evidence that Belcher--who identified herself as Hispanic--had used a racial epithet when she spoke with police.  In a foundational hearing outside the presence of the jury, it was established that during her police interview, Belcher said "Fuck you, niggers."  (§ 402.)  Apparently, she made this outburst after Michael reminded her that Bryant had referred to A. as a "mixed little sister."[11]

> [11] The transcript also showed that Michael and his mother reported that they were upset that Bryant had referred to A. as a "mixed little sister."  On appeal, Bryant asserts that this statement should also have been admitted into evidence.  From the two-page transcript that was provided to us on appeal, it appears that Belcher was angry that Bryant could steal from someone with whom he seemed to identify.  The trial court record of Belcher's report of this reference conflicts with the transcript.  In any case, the trial court only precluded her use of the one-word racial epithet, and not the "fuck you" response or the recollection of the "mixed little sister" comment prompting that response from Belcher.  Bryant cannot complain of the exclusion of evidence that his counsel chose not to offer into evidence.

Belcher told the trial court that she had been upset and felt betrayed by people--especially Jackson--who had come into her home and had lied to her.  She was particularly upset that the robbers had stolen items belonging to her grandniece and her younger son.  Although she had earlier denied having used a racial epithet, once the audiotape of the interview was played, Belcher admitted that she "said something horrible."

Twice, Bryant argued that the evidence was relevant to show bias--that her use of a racial epithet tainted her other testimony about Bryant having been in her house

United States District Court
For the Northern District of California

behaving in a suspicious manner.  He argued that Belcher had a racial motive for her suspicions; that the evidence was admissible to impeach her initial denial of having used any epithet; and that any evidence of racial bias was relevant in a case of a cross-racial identification.

The trial court recalled that Jackson was a friend of her son's and had been a guest in Belcher's home.  This was not the conduct of a racist, the trial court concluded.  It also noted that Belcher's grandniece was of mixed racial heritage, some of it African-American.  The prosecution argued against admission of the evidence, urging the trial court to balance the minimal relevance of the statement against the heavy prejudice that would result from its admission.[12]  The trial court conducted a balancing test and found the racial bias evidence to be highly prejudicial and inflammatory without really being probative.  Accordingly, while it permitted Bryant to bring out evidence that Belcher used profanity when referring to the intruders, it did not allow him to question her about her use of the one-word racial epithet "niggers."  (§ 352.)

    [12]   Three of the jurors were African-American.

Before the jury, Belcher testified that when she was interviewed by police, she was upset--particularly with Jackson--because she had considered him a friend.  She explained that when Jackson and Bryant appeared at her home early on the day of the incident, she had been uneasy about Bryant because of his conduct, not because of his race.  Reluctantly, Belcher testified that her grandniece A. was racially mixed--both Black and White.  She told the jury that A.'s father's family was Black and that she was close to them.  During cross-examination, Bryant did not bring out evidence that Belcher had said "Fuck you" during the interview, although the trial court had ruled that only the word "niggers" could not be admitted into evidence.

Outside the presence of the jury, Bryant's counsel reiterated his request to bring in evidence that Belcher used a racial epithet during her interview with police.  He argued that this evidence was the only way to challenge her testimony that her view of Bryant was not based on his race.  Again, the trial court exercised its discretion to exclude this evidence.  It found the evidence to be of little if any probative value, and found that this probative value was substantially outweighed by the highly inflammatory prejudicial effect of the proffered evidence.  (§ 352.)

B. Section 352

Bryant contends that the trial court abused its

7

discretion in excluding this proffered evidence.  He reasons that the probative value of the evidence was not substantially outweighed by its prejudicial effect.  A trial court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice.  (§ 352.)  The trial court enjoys broad discretion when assessing the probative value of proffered evidence and determining whether it is substantially outweighed by its prejudicial effect.  (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124.)  Its exercise of its discretion pursuant to section 352 to exclude evidence will not be reversed on appeal, absent a showing that the exercise of discretion was arbitrary, capricious or patently absurd, resulting in a manifest miscarriage of justice.  (Ibid.; see People v. Barnett (1998) 17 Cal.4th 1044, 1118 [evidence admitted]; People v. Alvarez (1996) 14 Cal.4th 155, 214-215 [same].)

In order to assess whether the trial court abused its discretion in excluding this evidence, we weigh the probative value of the evidence against the potential for prejudice resulting from its admission.  (See People v. Kipp (1998) 18 Cal.4th 349, 372; People v. Scheer (1998) 68 Cal.App.4th 1009, 1018; see also § 352.)  Of course, the proffered evidence had probative value because it raised an inference that Belcher was biased against African-Americans.  Credibility issues are matters for the jury to determine.  (Vorse v. Sarasy (1997) 53 Cal.App.4th 998, 1009.)  However, the Legislature has given trial courts the authority to balance the probative value of the evidence against its prejudicial effect, necessarily requiring that trial court conduct some weighing of the value of the proffered evidence.  (See § 352.)

The identity of the robbers was an issue in the case.  Melanie was not able to identify Bryant as a robber--of the two potential victims present at the time of the offense, only Michael made a positive identification of Bryant as Jackson's cohort.  Bryant reasons that some corroboration of Michael's identification was necessary to bolster it, given the various attacks on Michael's credibility at trial.  As Belcher's identification of Bryant tended to corroborate Michael's identification of him, her credibility is also at issue, Bryant argues.  For this reason, he urges us to find that evidence of her racial animus was relevant to show bias and to undermine her identification of Bryant.

This argument is flawed for several reasons.  First, it assumes incorrectly that Belcher's identification was the only evidence tending to corroborate Michael's identification evidence.  Bryant ignores other evidence that--taken together--tended to corroborate Michael's

identification of Bryant as the intruder who accompanied his friend Jackson during the robbery.  There was evidence at trial that Melanie observed that the robber wore a special boot on his foot and that Bryant wore such a boot months after the date of the crime, having worn it for many months.  This evidence alone would be sufficient to corroborate Michael's identification of Bryant as the robber.  But there is more evidence that would tend to corroborate Michael's identification in the evidence linking Jackson and Bryant together at the scene of the crime.  Bryant had called himself "Wiggler" when he was introduced to Michael; the name "Wiggla" appeared among the possessions of Jackson; a telephone number associated with "Wiggla" was contained in the memory of a cell phone found on Jackson at the time of his arrest; Jackson was known to Michael long before the incident; and both Michael and Melanie identified Jackson as the one of the perpetrators.  This other corroborative evidence makes it less crucial to the prosecution to corroborate the accuracy of Belcher's identification of Bryant.

Second, Bryant overstates the relevance and probative value of the proffered evidence.  His argument treats Belcher as if her identification evidence was a key to the case against him, as if she was an eyewitness to the charged crimes.  She was not.  Belcher identified Bryant as one of two men who had been at her house on the same day as the crimes occurred.  Both Bryant and Belcher had left the house and a lapse of time occurred before the robbery.  Belcher's identification was helpful to the prosecution about a collateral matter, but the identifications of the persons present at the time of the robbery--eyewitnesses Michael and Melanie--were much more probative than was hers.

Evidence of racial animus can be relevant to show bias. (See § 210 [witness credibility]; People v. Quartermain (1997) 16 Cal.4th 600, 628 [defendant's use of racial epithets against murder victim as tending to show premeditation and deliberation].)  In the case before us, we agree with the trial court's ultimate assessment that the proffered evidence's probative value was not substantial.  Even if proffered evidence has some probative value, a trial court may still exclude it if that probative value is not substantial or is largely outweighed by the probability that its admission would have a prejudicial effect.  (People v. Kipp, supra, 18 Cal.4th at p. 371; People v. Scheer, supra, 68 Cal.App.4th at p. 1018; see § 352.)  This brings us to our third problem with Bryant's argument--his assessment of the prejudicial effect of the evidence.

Prejudicial evidence within the section 352 context is evidence uniquely tending to evoke an emotional bias--evidence that has very little effect on the

9

disputed issues at trial.  (People v. Bolin (1998) 18 Cal.4th 297, 320; People v. Poplar (1999) 70 Cal.App.4th 1129, 1138.) Thus, the prejudice that section 352 seeks to avoid is not that naturally flowing from relevant, highly probative evidence.  The statute attempts to avoid the prejudging of a case based on extraneous facts. (People v. Zapien (1993) 4 Cal.4th 929, 958; People v. Poplar, supra, 70 Cal.App.4th at p. 1138.)  In addition to the reasons recited in section 352, that statute's balancing process requires consideration of the relationship between the proffered evidence and the relevant inferences to be drawn from it, whether the evidence is relevant to the main or only a collateral issue, and the proponent's need for the evidence to establish his or her case.  (People v. Wright (1985) 39 Cal.3d 576, 585.)

We are satisfied that the trial court properly concluded that the probative value of the proffered evidence was far outweighed by the likelihood that it might inflame the jury against Belcher.  A second prejudicial effect is the consumption of time that this collateral matter would have required.  Bryant argues that presenting the statements would have been brief.  However, having reviewed the statement transcript and the discussions of it that took place outside the presence of the jury, we found the evidence to be confusing and contradictory. (See fn. 11, ante.)  It is apparent to us that a time-consuming mini-trial would have been required to clearly present all of the evidence of whether or not Belcher was racially biased.  The broad discretion of section 352 authorizes the exclusion of evidence "to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (People v. Wheeler (1992) 4 Cal.4th 284, 296; see People v. Ayala (2000) 23 Cal.4th 225, 301.)  As the evidence was both inflammatory and potentially time-consuming, the trial court properly concluded that the evidence had a substantially prejudicial effect.

Finally, we observe that Bryant did not take up the trial court's invitation to question Belcher about her use of the phrase "Fuck you" during the interview.  It is significant that the trial court was willing to allow Bryant liberal cross-examination, but for the use of the single word that it found substantially more prejudicial than probative.  (See, e.g., People v. Watson (1956) 46 Cal.2d 818, 828.)

The trial court's ruling was not arbitrary, capricious or patently absurd such that it resulted in a manifest miscarriage of justice.  (See, e.g., People v. Rodrigues, supra, 8 Cal.4th at p. 1124.)  Thus, we are satisfied that the trial court did not abuse its discretion by excluding the proffered evidence.

C. Confrontation Clause

Bryant also argues that he was deprived of his constitutional right to confront witnesses against him--specifically, unfairly limiting the scope of cross-examination--by its exclusion of this evidence. (U.S. Const., 6th Amend.)  The confrontation clause of the Sixth Amendment guarantees the right of an accused in a state criminal prosecution to be confronted with the witnesses against him or her in order to have an opportunity to cross-examine them.  (<u>Delaware v. Van Arsdall</u> (1986) 475 U.S. 673, 678.)  However, the confrontation clause does not prevent a trial judge from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness.  Consistent with the confrontation clause, trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, inter alia, interrogation that is only marginally relevant. (<u>Id.</u> at p. 679.)

In this matter, we have held that the trial court acted within its discretion when excluding one word of Belcher's statement from the jury.  The trial court excluded evidence that had little probative value, marginal relevance and a high potential for inflaming the jury about a collateral identification by someone who was not an eyewitness to the crime.  (See pt. II.B., <u>ante</u>.)  It allowed Bryant to question Belcher about racial bias, but for the use of one inflammatory word.  We find that the exclusion of this single word was a reasonable limitation on cross-examination that did not impinge on Bryant's right to confront witnesses against him.  Thus, we find no violation of his right to a fair trial.

Ex. F at 8-15 (footnotes 10, 13 and 14 omitted).

I.   Confrontation Clause

Petitioner renews his claim that the trial court's refusal to allow the defense to show that Belcher used a racial epithet in reference to Petitioner limited his cross-examination in violation of his Sixth Amendment rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment provides that, in criminal cases, the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a

11

substantive guarantee.  <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004).  "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  <u>Id.</u>; <u>see</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974) (noting a primary interest secured by the Confrontation Clause "is the right of cross-examination").  The right to cross-examine, as guaranteed by the Confrontation Clause, provides the opportunity to "expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."  <u>Davis</u>, 415 U.S. at 318.  A defendant meets his burden of establishing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination."  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 680 (1986); <u>Slovik v. Yates</u>, 556 F.3d 747, 753 (9th Cir. 2009).

The Confrontation Clause does not, however, prevent a trial judge from imposing reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of issues, witness safety, or interrogation that is repetitive or only marginally relevant.  <u>Van Arsdall</u>, 475 U.S. at 679.  While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee a cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.  <u>See</u> <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985).  Trial judges therefore possess "wide latitude" to impose reasonable limits on cross-examination of witnesses.  <u>See</u> <u>Van Arsdall</u>, 475 U.S. at 679.

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the excluded evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." United States v. Beardslee, 197 F.3d 378, 383-84 (9th Cir.), amended, 204 F.3d 983 (9th Cir. 2000).

Here, the California Court of Appeal's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law, as set forth by the United States Supreme Court.  The state appellate court correctly identified Van Arsdall as the controlling law, and properly applied it in determining that the trial court's exclusion of the racial epithet was a reasonable limit on cross-examination.

As the state appellate court explained clearly and persuasively, the marginal probative value and relevance of the racial epithet was substantially outweighed by the probability that its admission would inflame the jury about a collateral identification by someone who was not an eyewitness to the crime. See Ex. F at 15; Van Arsdall, 475 U.S. at 679; Beardslee, 197 F.3d at 383-84.  The state appellate court reasonably concluded that the trial court acted within its discretion when it excluded one inflammatory and prejudicial word, but permitted Petitioner to question Belcher about her use of profanity and racial bias.  See Ex. F at 10-15.  Thus, Petitioner had an opportunity for effective and extensive cross-examination and the jury had sufficient

United States District Court
For the Northern District of California

13

information from which to assess Belcher's credibility.  See
Fensterer, 474 U.S. at 20; Beardslee, 197 F.3d at 383-84.  The
state appellate court made a reasonable and constitutionally
permissible conclusion that the trial court's decision to exclude a
single word did not impinge on Petitioner's Sixth Amendment right
to confront witnesses against him and, accordingly, did not violate
his right to a fair trial.

In the alternative, even if the state appellate court erred in
its ruling, Petitioner is not entitled to federal habeas relief
unless the error had a "'substantial and injurious effect or
influence in determining the jury's verdict.'"  Holley v.
Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009) (quoting Brecht,
507 U.S. at 637).  When cross-examination on a proper subject is
denied, the court should assume that the damaging potential of the
cross-examination would be fully realized and then evaluate, in
light of the importance of the witness's testimony in the entire
case, the extent of the cross-examination otherwise permitted and
the overall strength of the prosecution's case.  United States v.
Miguel, 111 F.3d 666, 671-72 (9th Cir. 1997).

Here, Belcher's corroborative identification of Petitioner was
not critical to the prosecution's case.  She did not identify him
as a burglar, only as a visitor to the house earlier in the day.
In addition, as the state appellate court pointed out, her
testimony that Petitioner had been at her house earlier was not the
only evidence that corroborated Michael's identification of
Petitioner as the visitor and later as one of the burglars.  See
Ex. F at 11-12.  For instance, Melanie's observation that one of
the burglars wore a special boot that matched the boot Petitioner

14

United States District Court
For the Northern District of California

wore months after the date of the crime also corroborated Michael's identification of Petitioner as the burglar.  Id.

Further, even if the trial court had allowed defense counsel to cross-examine Belcher on her use of the racial epithet, the potential support to Petitioner's defense would have been minimal because the use of the epithet had little probative value.  See Miquel, 111 F.3d at 671-72.  The defense did not contest the prosecution's evidence that the two men who came to the house when Belcher was there were African-American, or that Michael and Melanie were robbed by four African-American men.  Consequently, Belcher's use of the racial epithet during her police interview to refer to the people who had burglarized her home was not probative of her identification of Petitioner as one of the men who had been at her house earlier.  Additionally, Petitioner's argument that Belcher's use of the racial epithet was relevant to the strength of her cross-racial identification is unpersuasive because there was no evidence to support the proposition that the strength of a witness's cross-racial identification is negatively affected by the witness's alleged racial bias.  Nor does Belcher's use of this epithet give rise to a strong inference that she identified Petitioner because of racial bias.

In sum, it cannot be said that the trial court's decision to deny Petitioner the opportunity to cross-examine Belcher on her use of the racial epithet so as to call into question her credibility "had substantial and injurious effect or influence in determining the jury's verdict."  See Brecht, 507 U.S. at 637. Thus, Petitioner is not entitled to habeas relief on this claim. //

15

United States District Court
For the Northern District of California

II.   Section 352

Petitioner argues that the trial court's refusal to allow the defense to show that Belcher used a racial epithet in reference to Petitioner violated California Evidence Code § 352 and thereby deprived him of a fair trial.

Evidence Code § 352 permits a court to exercise its discretion to exclude evidence if its probative value "is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." As the state appellate court explained clearly, the trial court's exclusion of the racial epithet was reasonable and within its discretion.  See Ex. F at 10-14. Specifically, the trial court had a legitimate interest in excluding the racial epithet because the proffered evidence had a low probative value and was outweighed by the probability that it would have a substantial prejudicial effect by being both inflammatory and potentially time-consuming.  Id.  As such, the exclusion of the racial epithet was not a violation of Evidence Code § 352 but, rather, was consistent with the purpose of the evidentiary rule.

Further, even if there was a violation of state evidentiary law, such a violation is not grounds for federal habeas relief.  A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984);

United States District Court
For the Northern District of California

<u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20 (9th Cir. 1991); <u>see also</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) (although state lawmakers have "broad latitude" to establish rules excluding evidence from criminal trials, that latitude has constitutional limits).  Here, Petitioner argues only that the exclusion of the racial epithet violated Evidence Code § 352.  He does not argue that this alleged violation of state law infringed upon a federal constitutional or statutory right.

Assuming that Petitioner's claim is that the trial court's exclusion of the racial epithet violated federal law, the claim still fails.  Exclusion of defense evidence, even when proper under state law, can violate due process or a defendant's rights under the Confrontation Clause.  <u>See</u> <u>Holmes</u>, 547 U.S. at 324.  Regardless of the amendment in which the right to a defense is grounded, the analysis is the same.  <u>Id.</u>  Whether the right is rooted in the Due Process Clause, Compulsory Process Clause or Confrontation Clause, the Constitution guarantees the meaningful opportunity to present a defense, which is abridged by state evidence rules that infringe on the weighty interest of the accused and are arbitrary or disproportionate to their purposes.  <u>Id.</u>

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  <u>Chia v. Cambra</u>, 360 F.3d 997, 1004 (9th Cir.

United States District Court
For the Northern District of California

2004).  The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  Id. at 1006.

For the reasons discussed by the state appellate court and reiterated above, the exclusion of the racial epithet did not violate Petitioner's due process right to a fair trial or his right to present a defense.  See id. at 1004; Ex. F at 10-14.  Further, the record demonstrates that the trial court did not apply Evidence Code § 352 in a manner that was unreasonable, arbitrary or disproportionate to the purposes it is intended to serve.  See Holmes, 547 U.S. at 324; Ex. F at 10-14.  Because there was no constitutional violation by the trial court, the state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

No certificate of appealability is warranted in this case.  See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition).  Petitioner has failed to make a substantial showing that his claim amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484

(2000).

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated:  6/4/2012

CLAUDIA WILKEN
United States District Judge